IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LYNNETTE RAMOS-BORGES,

Plaintiff

v.

COMMONWEALTH OF PUERTO RICO,
PUERTO RICO HEALTH DEPARTMENT,
et al,

Defendants

CIVIL 08-1692 (JA)

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants Commonwealth of Puerto Rico and Puerto Rico Health Department, Rosa Pérez-Perdomo, former Secretary of Health, Samuel Barbosa, Director of Internal Audit of the Department of Health, and Hermes Rivera-Polanco, Director of Human Resources of the Department of Health, in their personal and official capacities where applicable, on March 31, 2010.  (Docket No. 39.)  Plaintiff, Lynnette Ramos-Borges, filed a motion in opposition to the motion for summary judgment on July 2, 2010.  (Docket No. 69.)  For the reasons set forth below, the defendants' motion for summary judgment is GRANTED.

CIVIL 08-1692 (JA)                              2

## I.  FACTUAL BACKGROUND

The facts as gleaned from the complaint, all facts of which have been denied by the defendants in their answer to the complaint, and are as follows:[1]

Plaintiff is an accountant with two masters degrees and twenty years of public service.  (Docket No. 1-10, at 3, ¶¶ 7-8.)   During the year 2000, Dr. Carmen Feliciano ("Dr. Feliciano"), Secretary of Health, requested that plaintiff work with her at the Department of Health ("DOH").  (Id. 3, ¶ 9.)  During the New Progressive Party ("NPP") administration, plaintiff was appointed to a trust position as the Director of Internal Audits, under Dr. Feliciano's supervision.  (Id. ¶ 10.) Later, the position of Auditor VI (Deputy Director of the DOH) was opened as a career position.  (Id. ¶ 11.)  Plaintiff applied for the position and was selected for the same on September 1, 2000.  (Id. ¶ 12.)

Plaintiff was a well-known member of the NPP.  While at the DOH, plaintiff participated in activities sponsored by the DOH's NPP-affiliated employees.  (Id. ¶ 13.)  During her probationary period under Dr. Feliciano's supervision, plaintiff received good performance evaluations.  (Id. at 4, ¶ 14.)   After the 2000 elections, there was a change in government and the Popular Democratic Party ("PDP") gained control.  (Id. ¶ 17.)  Dr. Johnny Rullán ("Dr. Rullán") replaced Dr.

---

[1] The facts are taken from the complaint but also imported from a previous opinion and order of the court on a motion to dismiss.  (Docket No. 15, March 10, 2009.)   The facts are presented as background for the analysis of the countervailing statements of facts in the motions addressing summary judgment.

CIVIL 08-1692 (JA)                    3

Feliciano as the Secretary of Health of the DOH.  (Docket No. 1-10, at 4, ¶ 18.)

Samuel Barbosa ("Mr. Barbosa") was appointed in a trust position as the Director

of Internal Audits and became plaintiff's immediate supervisor.  Plaintiff remained

Deputy Director, but Mr. Barbosa did not assign her duties.  (Id. ¶¶ 19-20.)

On October 2, 2001, the defendants notified plaintiff, in a letter dated

September 6, 2001, of their intent to declare null and void her career

appointment, that she failed to comply with her probationary period and that they

were reducing her salary by eliminating a salary differential.  (Id. at 4-5, ¶¶ 22-

23.)  In or around January 2002, the defendants referred plaintiff's appointment

to the Secretary of Justice to take legal action to remove her from the career

position.   On November 18, 2002, defendants filed a *quo warranto* and

declaratory judgment complaint against plaintiff and several other employees and

requested that the court declare plaintiff's appointment null and void and order

her removed from said position.  (Id. at 5, ¶¶ 24-25.)  Plaintiff was forced to

retain an attorney to defend her in said action.  (Id. ¶ 26.)  On February 24, 2004,

the Court of First Instance dismissed the complaint.  The defendants challenged

the court's dismissal at both the Commonwealth Court of Appeals and the

Supreme Court but appellate review was denied.  (Id. ¶¶ 27-31.)

After the court proceedings, Dr. Pérez-Perdomo ("Dr. Pérez") and the other

defendants continued the alleged acts of discrimination and created a hostile work

CIVIL 08-1692 (JA)                    4

environment with "innuendos," a demotion, selective discipline and retaliation. (Docket No. 1-10, at 6, ¶ 32.)  Plaintiff requested a statutory salary increase, which was denied.  (Id. ¶ 33.)  Plaintiff's file was audited and an additional $100 reduction to her salary was imposed.  Plaintiff objected to this reduction to Mr. Barbosa, Hermes Rivera-Polanco ("Mr. Rivera") and Edith Sánchez ("Mrs. Sánchez"), the Deputy Director of Human Resources.  (Id. ¶ 34.)  Plaintiff requested to be able to review her personnel file in order to respond to the defendants' claims; access to her file was denied.  (Id. ¶ 35.)  Plaintiff alleges that the defendants, in a concerted manner, began to harass her due to her visits to the Human Resources Office.  They questioned her for said visits and reprimanded her if she was tardy.  Meanwhile, other employees were not  disciplined for their tardiness or for going to the bathroom.  (Id. ¶ 36.)  If plaintiff was late five minutes, said time was deducted from her pay while other employees who were late were treated differently.  (Id. at 7, ¶ 39.)  She understands that the defendants created a hostile work environment with the intention of forcing her to resign.  (Id. at 6, ¶ 36.)  Plaintiff requested a leave of absence without pay to study and prepare for an exam to obtain her Certified Public Accountant ("CPA") license but the same was denied.  (Id. at 6-7, ¶ 37.)  Plaintiff also understands that Mr. Barbosa made an improper comment, while stating that "he wanted to make an audit with her in Vieques during the weekend," when there was no office

CIVIL 08-1692 (JA)                         5

in Vieques to audit.  She complained about this statement but the defendants took no action.  (Docket No. 1-10, at 7, ¶ 38.)

On or around July 1, 2007, plaintiff was demoted from Auditor VI to Auditor II.  Orlando Vélez ("Mr. Vélez"), who was Auditor V, was appointed as Deputy Director and classified as Auditor VI.  Plaintiff alleges she was stripped of her career position, rank and duties.  (Id. ¶ 40.)  Plaintiff requested that the defendants review this decision and that she be reinstated in her career position. However, plaintiff remains an Auditor II without duties.  (Id. ¶ 41.)  On December 14, 2007, plaintiff followed-up on her request seeking review of her demotion.  The defendants denied ever receiving copy of such request.  Plaintiff also wrote to Mr. Rivera and included a copy of her initial request to review her demotion.  (Id. at 9, ¶ 53.)  On or around February 11, 2008, Mr. Barbosa was threatening and shouting at plaintiff during work hours.  He falsely accused her of "having damaged his car."  Plaintiff became very nervous.  (Id. at 7-8, ¶¶ 42-43.)

After this incident, plaintiff went immediately to Dr. Pérez' office to complain about Mr. Barbosa's actions, but Dr. Pérez refused to receive plaintiff and referred the matter to one of her assistants.  Plaintiff collapsed at Mrs. Pérez' office and was taken to the hospital by ambulance.  (Id. at 8, ¶¶ 44-45.)  She was placed on medical rest by the State Insurance Fund Corporation ("SIFC").  After plaintiff

CIVIL 08-1692 (JA)                           6

exhausted her sick leave, co-workers donated days from their sick leave.  The

leave donation was rejected by the defendants.  Plaintiff understands this was

done with the intention to keep her without salary and force her resignation.

(Docket No. 1-10, at 8, ¶ 46.)  Further, plaintiff alleges that the defendants made

derogatory comments about NPP members and against her.  Mr. Barbosa told

plaintiff she had "to take it," to accept things since they "were in power now,"

referring to the PPD.  (Id. ¶¶ 48-49.)

## II.  PROCEDURAL BACKGROUND

On June 26, 2008, plaintiff filed a complaint against the defendants pursuant

to 28 U.S.C. §§ 1983, 1985(3), and 1988, and the First, Fifth and Fourteenth

Amendments to the Constitution of the United States.  (Docket No. 1-10, at 2, ¶

6.)   Plaintiff also brought several supplemental claims under the laws and

Constitution of Puerto Rico alleging violations of her rights since the causes of

action stem from the same nucleus of operative facts as their federal

counterparts.  (Id.)  The state causes of action are brought under Law 115 of

December 20, 1991, P.R. Laws Ann. tit. 29, § 194 et seq.; Law No. 426 of

November 7, 2000, P.R. Laws Ann. tit. 1, § 601 et seq.; Law No. 100 of June 30,

1959, as amended, P.R. Laws Ann. tit. 29, § 146 et seq. (Id.) On March 6, 2009,

the defendants filed their answer to plaintiff's complaint admitting nothing.

(Docket No. 11.)

CIVIL 08-1692 (JA)                    7

On March 31, 2010, the defendants moved for summary judgment. (Docket No. 39.)  They argue in their motion and memorandum of law in support that plaintiff's section 1983 claim is time-barred since, notwithstanding the allegation that the discriminatory practice began in 2001, only two events of the arguable series of acts fall within the applicable statute of limitations, that is, events occurring between June 26, 2007 and June 26, 2008, the date of the filing of the complaint.  (Id. at 6.)  Specifically, the defendants claim that the following acts are time barred:

1)   the process that was allegedly initiated on September 6, 2001 to declare null and void plaintiff's career position in the DOH which ended on June 17, 2005 as it was known by plaintiff since the year 2001.

2)   the denial of a salary increase under Law 184 of August 2004 requested in September 2005, since knowledge of the denial of increase was acquired the following month when plaintiff received her paycheck for the month of October 2005.

3)   that plaintiff's salary was decreased on October 2005 since knowledge of the denial of the salary increase started when she received her paycheck on the same month.

4)   that since 2001 plaintiff was questioned as to her bathroom visits and visits to other offices because she had knowledge of said acts since then and because said acts can only be considered at the most that she continued to suffer from the ongoing effects of the first denial.

5)   that plaintiff was denied a leave of absence without pay to study for the CPA exam that she requested on August 2006 for the period of September 1, 2006 until September 1, 2007,

CIVIL 08-1692 (JA)                        8

        because she knew from September 1, 2006 that the leave was not granted as she had to report to work.

6)    that plaintiff was not assigned duties or job assignments since February 2001 because she had knowledge of said acts since then and because said acts can only be considered at the most that she continued to suffer from the ongoing effects of the first denial.

(Id. at 6-8.)  The defendants further argue that although plaintiff's being demoted from Auditor VI to Auditor II on July 2, 2007, and  being accused by Mr. Barbosa of damaging his car on February 11, 2008, are acts that fall within the statute of limitations, they cannot be considered as actionable violations.   (Id.)   The defendants believe that based on these acts, plaintiff cannot establish either a *prima facie* case for political discrimination or a case for due process violation under the Fourteenth Amendment.  (Id. at 9 & 11.)

On July 2, 2010, plaintiff filed her response in opposition to the defendants' motion for summary judgment.  (Docket No. 69.)  Plaintiff stresses that while a tort claim may be time barred after one year has elapsed from the aggrieved occurrence, where a pattern of discrimination is alleged, the statue of limitations begins to run from the last discriminatory act.  (Id. at 3.)  This is known as the continuing violation theory, which provides that when the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time barred.  See Pérez-Sánchez v. Pub. Bldg. Auth., 557 F. Supp. 2d 227, 235 (D.P.R. 2007).

CIVIL 08-1692 (JA)                    9

Plaintiff notes that since the complaint was filed on June 26, 2008, the one year statute of limitations extends to any actions prior to the filing of the complaint since June 26, 2007.  (Docket No. 69, at 5.)  Plaintiff thus argues that her claims are not time barred and/or constitute background evidence of discrimination.  (Id.)  Plaintiff addresses the occurrences listed by the defendants beginning with the nullification process.  (Id. at 6.)  She claims that although she was notified of the intention to nullify her appointment in September 2001, this was not a final decision and while she was notified of her right to an informal hearing and had one, she was never notified of a final decision and thus the statute of limitations arguably never began to run.  (Id.)

Plaintiff relates the *quo warranto* action filed by the defendants in October 2002 and which lasted four years through the appellate process, ending in June 2005.  (Id.)  Plaintiff argues that these early attempts to discharge her set the tone of the years to come, and that her being forced to defend her employment in court for four years was part of the hostile work environment to which plaintiff was subjected, which environment also created emotional distress and mental anguish.  (Id. at 7.)  Even assuming it were time barred, it would arguably constitute background evidence of motive and intent in support of plaintiff's claim of discrimination due to political affiliation.  (Id.)  Plaintiff emphasizes that the defendants' actions cannot be considered in an isolated way.  (Id.)  While the

CIVIL 08-1692 (JA)                    10

court action was pending, plaintiff had no employment duties, no equipment, and was deprived of benefits granted other auditors such as per diem and car allowance.  (Docket No. 69, at 7.)  While she had the career position of deputy director, she was not allowed to carry out the duties of that position.  (Id.)  After the June 2005 Puerto Rico Supreme Court decision became final, plaintiff claims that the defendants reclassified her as Auditor II from Auditor VI without giving her proper notice and an opportunity to submit her duties and defend her position. (Id.)

Plaintiff argues that she was discriminated against by the defendants when she was denied an automatic salary increase according to Law No. 184 of August 2004, although others received their salary increases.  (Id.)  She claims that this failure is a continuous violation in that each time she received a paycheck not reflecting the automatic pay raise constituted an independent violation in which the limitations period began to run anew.  (Id. at 8.)  Similarly, plaintiff argues that each time she did not receive the salary she was entitled to after a salary decrease in October 2005, constituted an independent violation which caused the limitations period to run anew.  (Id.)

Plaintiff also contests that there was a constant and continuous pattern of discrimination beginning in February 2001 until December 2008 which included being followed and closely monitored, not receiving equipment, laptop, printer,

CIVIL 08-1692 (JA)                              11

access code to photocopier and essential tools to work.  (Docket No. 69, at 8.)

She claims that she was the only person who was questioned when she arrived

late while other auditors would come and go without being questioned.  (Id.)

Also, she states that she was denied leave without pay to study by the end of the

year 2007 and was falsely accused of acts of vandalism.  (Id. at 9.)

        Plaintiff believes that the defendants' actions were in retaliation for her

opposing their illegal actions which began with the notice to invalidate her

appointment.  (Id.)  She claims that the defendants having lost the legal battle,

were more adamant against her and blatantly retaliatory.  (Id.)  Plaintiff

additionally argues that among other things the reason why she was denied the

leave of absence without pay was because she complained of Mr. Barbosa's

improper approaches and comments.  (Id. at 10.)  Plaintiff notes that under

Puerto Rico law, the statute of limitations for retaliation is three years.  (Id., citing

P.R. Laws Ann. tit. 29, § 194a.)

        Moreover, plaintiff argues that after the new PDP administration began and

the new director was appointed in the year 2001, she was not assigned any work

and was deprived of her rank as Auditor VI (demotion in fact).  (Id. at 10.)

Plaintiff claims that this took place until 2008 when the PDP administration ended.

(Id. at 11.)  According to plaintiff, the work performed did not amount to six

months during those eight years.  (Id. at 10.)  She claims that each day she was

CIVIL 08-1692 (JA)                    12

not assigned duties or the duties she was given were below the level of her position and classification.  (Docket No. 69, at 11.)

As to the defendants' arguments regarding the claims that fall within the one year statute of limitations, plaintiff contests that they are in violation of the court's order which only allowed the defendants to address the time bar issue. (Id. at 12.)  Nevertheless, plaintiff maintains that she has established a *prima facie* case of political discrimination and a due process claim under the Fourteenth Amendment.  (Id. at 13.)

### III.  STANDARD OF REVIEW

A.  Summary Judgement

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-

CIVIL 08-1692 (JA)                    13

Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

"[T]he mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carrol v. Xerox Corp.,

294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit

Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996))

("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to

defeat summary judgment.").  The nonmoving party must produce "specific facts

showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)); see also

López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

"A genuine issue exists when there is evidence sufficient to support rational

resolution of the point in favor of either party."  Nereida-González v. Tirado-

Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248; United States v. One Parcel of Real Prop., 960 F.2d 200,

204 (1st Cir. 1992)).  "In this context, 'genuine' means that the evidence about

the fact is such that a reasonable jury could resolve the point in favor of the

CIVIL 08-1692 (JA)                    14

nonmoving party. . . . "  Burke v. Town of Walpole, 405 F.3d 66, 75 (1st Cir. 2005) (quoting United States v. One Parcel of Real Prop., 960 F.2d at 204).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  However, a moving party "may move for summary judgment 'with or without supporting affidavits.'"  Id. at 323 (quoting Rules 56(a) and (b)).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)); see also Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)) ("[the court] must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.").

B.  Puerto Rico Local Rule 56

In this court, Local Rule 56(b), previously Local Rule 311.12, requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  Dávila v. Potter, 550 F.

CIVIL 08-1692 (JA)                    15

Supp. 2d 234, 238 (D.P.R. 2007) (citing Local Civil Rule 56).  These facts are then

deemed admitted until the nonmoving party provides a similarly separate, short

and concise statement of material facts establishing that there is a genuine issue

in dispute.  Local Civil Rule 56(e); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32,

33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000);

Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also

Corrada-Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

"Additionally, the facts must be supported by specific reference to the record,

thereby pointing the court to any genuine issues of material fact and eliminating

the problem of the court having 'to ferret through the Record.'"  Pica-Hernández

v. Irizarry-Pagán, 671 F. Supp. 2d 289, 293 (D.P.R. 2009) (quoting Domínguez

v. Eli Lilly & Co., 958 F. Supp. at 727).  "Any statement of fact provided by any

party which is not supported by citation to the record may be disregarded by the

court, and any supported statement which is not properly presented by the other

party shall be deemed admitted."  Del Toro-Pacheco v. Pereira-Castillo, 662 F.

Supp. 2d 202, 210 (D.P.R. 2009).  "Failure to comply with this rule may result,

where appropriate, in judgment in favor of the opposing party."  Id. (citing

Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Stepanischen v. Merch. Despatch

Transp. Corp., 722 F.2d 922, 932 (1st Cir. 1983)).  Also, "[t]he First Circuit has

repeatedly held that the district court is justified in deeming one party's submitted

CIVIL 08-1692 (JA)                    16

uncontested facts to be admitted when the other party fails to file an opposition

in compliance with Local Rule 56." González-Rodríguez v. Potter, 605 F. Supp. 2d

349, 357 (D.P.R. 2009) (citing Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d

50, 55 (1st Cir. 2006); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir.

2003); Corrada-Betances v. Sea-Land Serv., Inc., 248 F.3d at 43-447).

The defendants submitted their statement of uncontested material facts on

March 31, 2010 (Docket No. 40), and on July 2, 2010, plaintiff submitted her own

statement of uncontested facts.  (Docket No. 69-1.)  Thus, parties have complied

with the district court's local anti-ferret rule.  It is clear from an examination of

the statement of uncontested facts and plaintiff's response to the same that the

following uncontested facts have been established:

1) Plaintiff has a BBA in Accounting and a Master's degree in Administration, Finance and Human Resources.

2) Plaintiff began to work at the DOH in the year 2000.

3) Plaintiff began working as a trust employee, as Director of the Internal Audit Office under Dr. Feliciano's supervision and the NPP administration.

4) A position of Auditor VI, with the duties of Deputy Director, was opened as a career position.  The nature of the position was professional work in accounting consisting in the supervision of activities in the Audit Office, to verify that the DOH's fiscal activities were performed according to the Puerto Rico laws and regulations.

5) On May 18, 2000, plaintiff applied for the Auditor VI position.

CIVIL 08-1692 (JA)                    17

6)    Plaintiff was certified as eligible, and was later selected and appointed to the position subject to a probationary period of 12 months.  Plaintiff was subjected to an evaluation process from September to December 2000, which she passed.

7)    After the change of administration in the year 2001, under Dr. Rullán's administration, Mr. Barbosa was appointed Director of Internal Audits, and plaintiff's direct supervisor.

8)    In the year 2003, the DOH began the drafting of a new Classification Plan, which became effective in July 2007.

9)    Plaintiff alleges that on September 6, 2001, the defendants initiated a process (notification of intent) to declare null and void her career position in the DOH.  This process ended on June 17, 2005.[2]  (The particular process ended regardless of motive or intent of the defendants to discharge her immediately after the change of government.)

10)   Plaintiff alleges that the defendants denied her a salary increase under Law 184 of August 2004, which was requested in September 2005.  (Plaintiff makes reference to other salary increases which were later denied including as late as December 2008.)

11)   Plaintiff alleges that her salary was decreased in October 2005. (Again, plaintiff makes reference to other salary increases which were later denied including as late as December 2008.)

12)   Plaintiff alleges that she was questioned as to her bathroom visits, visits to other offices, tardiness for work and subjected to improper comments since the year 2001. (Plaintiff qualifies the answer by stating that the action continued on a daily basis until December 2008, thus creating a hostile work environment.)

---

[2] Plaintiff qualifies her responses adding facts but not denying the statement of uncontested facts.  A qualified answer accompanied by neither an admission nor a denial places the anti-ferret rule on its head.

CIVIL 08-1692 (JA)                    18

13)   Plaintiff alleges that she was denied a leave of absence without pay to study for the CPA exam that she requested in August 2006 for the period September 1, 2006 until September 1, 2007.  (Plaintiff qualifies the answer by stating that the denial of leave was made after Mr. Barbosa's improper approaches and comments.  She was also denied other requests for leave.)

14)   Plaintiff alleges that she was not assigned duties or job assignments from February 2001.  (Plaintiff qualifies this by stating that she worked a total of six months in eight years between February 2001 and December 2008.  Otherwise, she read the newspaper and magazines.)

15)   Plaintiff alleges that she was demoted from Auditor VI to Auditor II on July 2, 2007.  (Plaintiff qualifies this statement as reflecting a de facto demotion caused by Mr. Barbosa.)

16)   Plaintiff was classified as Auditor II on July 2, 2007 and was assigned a monthly salary of $4,949 which represented a $150 increase from her previously assigned salary. (Plaintiff qualifies this statement by explaining that she was granted the same salary increase as all other employees but was denied the proper salary because she was improperly classified to a lower position, thus losing a higher salary increase to which she was entitled.)

17)   An Auditor VI acts as Deputy Director and supervises the personnel, and reviews and corrects the reports prepared by other auditors.  The Auditor II only performs routine audits, it does not supervise or review the work of other auditors, nor handles any problem or issue regarding the office personnel. The other employee  classified as Auditor VI with the new plan was classified as Internal Audit Auxiliary Director.

18)   The salary for a Auditor II ranges between $1,877 and $2,628, while the salary for an Auditor VI ranged between $3,362 and $4,872.

19)   In September 2007, plaintiff became aware that Mr. Barbosa had prepared and submitted a questionnaire regarding her position and duties without her input or approval.

CIVIL 08-1692 (JA)                    19

20)   Plaintiff alleges that she was accused by Mr. Barbosa of damaging his car on February 11, 2008.  (This is admitted by plaintiff and qualified in a lengthy statement.)

21)   As a result of the alleged incident with Mr. Barbosa, plaintiff was taken to the hospital and was placed on medical treatment by the SIFC.

22)   After plaintiff finished her treatment she requested Dr. Pérez to be allowed to return to work and to be assigned the duties of an Auditor VI.  Plaintiff was allowed to return to work but was not assigned the duties she had requested.

23)   Plaintiff complained in writing to Dr. Pérez about the alleged hostile work environment and her demotion. She also complained to Dr. Pérez through her staff.

24)   Plaintiff sent multiple letters from February 2001 until the year 2008 to Dr. Rullán, Mr. Rivera, Mr. Barbosa and Dr. Pérez complaining about the alleged discriminatory actions against her.

25)   On June 26, 2008 plaintiff filed this complaint.

IV.  DISCUSSION

A.  Statute of Limitations

It has been consistently held that "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."  Wilson v. García, 471 U.S. 261, 266-67 (1985).  Specifically, sections 1983 and 1985 claims borrow the state's statute limitations.  Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004).  The applicable

CIVIL 08-1692 (JA)                      20

law in Puerto Rico is P.R. Laws Ann. tit. 31, § 5298(2).  As such, a one-year statute of limitations applies for actions brought in the District of Puerto Rico under section 1983.  Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  Although how long the metaphorical clock will tick for is derived from state law; when that clock starts ticking, it finds its genesis in federal law, that is, on the date that the plaintiff knew or should have known of the harm.  Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992).  However, "[i]n the employment discrimination context, '[the First Circuit] has rejected the contention that claims do not accrue until the plaintiff knows of both the injury and the discriminatory animus.'"  Torres-Rivera v. P.R. Elec. Power Auth., 598 F. Supp. 2d 250, 254 (D.P.R. 2009) (quoting Marrero-Gutiérrez v. Molina, 491 F.3d 1, 6 (1st Cir. 2007)).  Since the original complaint was filed on June 26, 2008,  the statute of limitations would ordinarily prevent any claims that occurred before June 26, 2007.  Plaintiff vehemently argues that the court should apply the "continuing violation" doctrine.   There are two types of continuing violations, serial and systemic.  See Megwinoff v. Banco Bilbao Vizcaya, 233 F.3d 73, 74 (1st Cir. 2000) (citing Pilgrim v. Trs. of Tufts Coll., 118 F.3d 864, 869 (1st Cir. 1997)).  In this case, plaintiff alleges a serial violation.  To establish a serial violation, a plaintiff must allege "a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong

CIVIL 08-1692 (JA)                    21

actionable under Title VII." Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)

(citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989)).  Of

those acts, a plaintiff must establish, inter alia, that a discriminatory act occurred

during the period allowed by the statute of limitations.  Muñiz-Cabrero v. Ruiz, 23

F.3d 607, 610 (1st Cir. 1994) (quoting Johnson v. Gen. Elec., 840 F.2d 132, 137

(1st Cir. 1988)).  However, "in the Title VII context, 'courts must be careful to

differentiate between discriminatory acts and the ongoing injuries which are the

natural, if bitter, fruit of such acts.'"  Gilbert v. City of Cambridge, 932 F.2d 51,

58 (1st Cir. 1991) (quoting Jensen v. Frank, 912 F.2d at 523).  "A continuing

violation is not stated if all that appears from the complaint is that the plaintiff

continues to suffer from the ongoing effects of some past act of discrimination."

Muñiz-Cabrero v. Ruiz, 23 F.3d at 610 (quoting Goldman v. Sears, Roebuck & Co.,

607 F.2d 1014, 1018 (1st Cir. 1979)).  It is important to point out that "[t]here

is no doubt but that a continuing violation-whether systemic or serial-will fail

'[e]ven where a plaintiff alleges a violation within the appropriate statute of

limitations period, . . . if the plaintiff was or should have been aware that he was

being unlawfully discriminated against while the earlier acts, now untimely, were

taking place.'"  Water Keeper Alliance v. U.S. Dep't of Def., 152 F. Supp. 2d 163,

172 (D.P.R. 2001) (quoting Provencher v. CVS Pharmacy, Div. of Melville Corp.,

CIVIL 08-1692 (JA)                              22

145 F.3d 5, 14 (1st Cir. 1998); Sabree v. United Bd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 400-02 & n.7 (1st Cir. 1990)).

In the present case, plaintiff alleges that the nullification process which started in 2001 is a discriminatory act that is not time barred because after the hearing was held she was not notified of the final decision. (Docket No. 69, at 6.) Plaintiff is incorrect. Although the defendants do not contest that said notification was not given, plaintiff admits that the nullification process concluded in 2005 when the Court of Appeals and the Supreme Court of Puerto Rico affirmed the First Instance Court's order dismissing the *quo warranto* filed by the defendants in 2002. (Id.) It is from this moment that plaintiff knew or should have known that she was being discriminated against. Furthermore, the court finds that the other discriminatory acts alleged by plaintiff are time barred. Plaintiff claims that she was constantly monitored by the defendants and that she was denied a salary increase. Also, plaintiff alleges that the defendants denied her request for leave of absence. All of these acts, except for plaintiff's allegation of been constantly monitored, occurred between 2005 and 2006. According to plaintiff, the monitoring began in 2001 and continued until 2008. Although it could be argued that this particular act cannot be viewed as an act from which plaintiff simply continues to suffer from its ongoing effects, like the allegation regarding the nullification process, plaintiff does not contest that she did not know or that she

CIVIL 08-1692 (JA)                    23

did not have any reason to know of these acts at the time they took place.  Asides

from all of these alleged acts of discrimination by the defendants, plaintiff claims

that since 2001 she was discriminated against by being deprived of her duties.

(Docket No. 69, at 10.)  This act according to plaintiff is not time barred as the

defendants suggest because the violation was repetitive, continuous and extended

into the statute of limitations, and after the filing of the complaint.  (Id. at 11.)

Again plaintiff is mistaken.  This court has held that an allegation of deprivation

of duties is "not actionable under the continuing violation theory."  Díaz-Ortiz v.

Díaz-Rivera, 611 F. Supp. 2d 134, 142 (D.P.R. 2009) (quoting Rivera-Torres v.

Ortiz-Vélez, 306 F. Supp. 2d 76, 84 (D.P.R. 2002)).  Therefore, since the alleged

discriminatory act relates to the deprivation of plaintiff's duties the same is time-

barred.  The only alleged acts of discrimination that the court finds are not time

barred are those related to plaintiff's demotion and those related to the incident

between plaintiff and Mr. Barbosa.  According to plaintiff, she was demoted on July

2, 2007 and on February 11, 2008, she was accused by Mr. Barbosa of damaging

his car.  These acts clearly fall within the statute of limitations since both of them

occurred before June 26, 2007.  However, as it is discussed below plaintiff does

not have any actionable claims under federal law.

    1.  Fourteenth Amendment Due Process

CIVIL 08-1692 (JA)                    24


        To establish a procedural due process claim under section 1983, a plaintiff
"must allege first that it has a property interest as defined by state law and,
second, that the defendants, acting under color of state law, deprived it of that
property interest without constitutionally adequate process." Marrero-Gutiérrez
v. Molina, 491 F.3d at 8 (quoting  PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 30
(1st Cir. 1991)).  "In order to establish a constitutionally-protected property
interest, a plaintiff must demonstrate that she has a legally recognized
expectation that she will retain her position." Santana v. Calderón, 342 F.3d 18,
24 (1st Cir. 2003), cited in González-de-Blasini v. Family Dep't, 377 F.3d 81, 86
(1st Cir. 2004) and Marrero-Gutiérrez v. Molina, 491 F.3d at 8.

        Under Puerto Rico law, a tenured public employee has a property interest
in his continued employment.  Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173
(1st Cir. 1988); Soto González v. Rey Hernández, 310 F. Supp. 2d 418, 425
(D.P.R. 2004).  As such, plaintiff had a property interest in her continued
employment and her termination required procedural due process. See Cleveland
Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-40 (1985).

        "The Due Process Clause of the Fourteenth Amendment guarantees those
public employees who possess a property interest in continued employment the
right to notice and a hearing prior to the termination of their employment."
Febus-Cruz v. Sauri-Santiago, 652 F. Supp. 2d 140, 150-51 (D.P.R. 2009) (citing

CIVIL 08-1692 (JA)                    25


Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542-44; González-de-Blasini v. Family Dep't, 377 F.3d at 86; Kauffman v. P.R. Tel. Co., 841 F.2d at 1173).  The notice may be oral and/or written and must inform the tenured public employee of the charges against him.  Also, it must contain an explanation of the employer's evidence, and the employee must have the opportunity to present his side of the story.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546.

The defendants argue that plaintiff's rights under the Fourteenth Amendment were not violated because she was given a salary increase and because their actions did not affect a property interest.  (Docket No. 39, at 11.) They further contest that even if it was assumed that such a right was indeed violated, the record shows that plaintiff was given the opportunity to request a review of the DOH's classification determination.   (Id.)  Also, the defendants claim that Mr. Barbosa cannot be held liable for the damages allegedly suffered by plaintiff because he did not have the delegated duties to carry out the personnel actions which plaintiff complains of.  (Id.)

Plaintiff in turn argues that she has two property interests that were affected, her rank and duties and her salary.  (Docket No. 69, at 20.)  She alleges that the  demotion was intentional, illegal and unjustified.  (Id.)  According to plaintiff, Mr. Barbosa, without her consent, submitted his own version of what were her duties.  (Id.)  Also, she claims that she complained about this and about

CIVIL 08-1692 (JA)                    26

not being assigned duties to all of the defendants but that no action was taken. (Docket No. 69, at 20.)  Thus, plaintiff believes that her demotion is an action that shocks the conscience to the process established without adequate notice to prepare in violation to the Fourteenth Amendment.  (Id. at 21.)

        Plaintiff in this case was able to successfully plead the first two elements for a due process violation.  First, as evidenced by the findings of fact plaintiff has been a "career" employee at the DOH since on or about 2001. Second, plaintiff was demoted from Auditor VI to Auditor II on July 2, 2007.  As to the third element plaintiff did not sufficiently plead a lack of constitutionally adequate process prior to her demotion.  See Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 102-04 (1st Cir. 1997); Rosario-Rivera v. Aqueduct & Sewer Auth. of P.R., 472 F. Supp. 2d 165, 170 (D.P.R. 2007); Medina-Díaz v. González-Rivera, 371 F. Supp. 2d 77, 81-82 (D.P.R. 2005); DelSignore v. Dicenzo, 767 F. Supp. 423, 426-28 (D.R.I. 1991); Ortiz-Medina v. Tirado-Delgado, 660 F. Supp. 1157, 1162-63 (D.P.R. 1987).  As the record shows, the DOH afforded plaintiff the necessary safeguards prior to her demotion.  Plaintiff was notified by the DOH of its intention to demote her and was informed that in the case that she did not agree with the new classification she had the right to request administrative review.  (Docket No. 65-4.)  Also, plaintiff was told that if she disagreed with the administrative review she had the right to appeal to the Appeals Commission of

CIVIL 08-1692 (JA)                    27

the Human Resources of Public Service Administration ("CASARH").  (Docket No. 65-4.)   Thus, plaintiff's Fourteenth Amendment due process claim must be dismissed.

2.  First Amendment Political Discrimination

The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions.  See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000).  To establish a *prima facie* case for political discrimination, a plaintiff must show "that (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action."  Cintrón-Arbolay v. Cordero-López, ___ F. Supp. 2d ___ , 2010 WL 1838086, *2 (D.P.R. May 5, 2010) (citing Martínez-Vélez v. Rey Hernández, 506 F.3d 32, 39 (1st Cir. 2007) (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (quoting González-De-Blasini v. Family Dept., 377 F.3d at 85-86)).  Once plaintiff has established a *prima facie* case, "[t]he burden then shifts to the defendant, who must articulate a nondiscriminatory basis for the adverse employment action and establish by a preponderance of the evidence that he would have taken the same employment

CIVIL 08-1692 (JA)                    28

action regardless of the plaintiff's political affiliation." Febus-Cruz v. Sauri-Santiago, 652 F. Supp. 2d at 151 (citing Padilla-García v. Guillermo Rodríguez, 212 F.3d at 74); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998)).

"Evidence of a highly-charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially in an instance where a plaintiff was a conspicuous target for political discrimination." Quiñones-Colón v. Calderón, 371 F. Supp. 2d 84, 88 (D.P.R. 2005) (citing Rodríguez-Ríos v. Cordero, 138 F.3d at 24). However, "[e]vidence that a plaintiff held a trust position under a previous administration of opposing political affiliation, and that plaintiff is a well-known supporter of a different political party . . . may not suffice to show that a challenged employment action was premised upon political affiliation." Febus-Cruz v. Sauri-Santiago, 652 F. Supp. 2d at 149 (citing González-de-Blasini v. Family Dep't, 377 F.3d at 85-86).

The defendants argue that plaintiff cannot establish a *prima facie* case for political discrimination because there is no evidence on the record that her demotion stemmed from a politically based discriminatory animus. (Docket No. 39, at 10.) They argue that the new Classification Plan was prepared by an independent contractor and that the plan was executed for all employees of the DOH. (Id.) Thus, the defendants claim that even if plaintiff was able to establish a *prima facie* case, they could not be held liable because the same course of

CIVIL 08-1692 (JA)                    29

action would have been taken as the New Classification plan was put in effect for all employees of the DOH.  (Docket No. 39, at 10.)  Also, the defendants reiterate that  Mr. Barbosa cannot be liable for the damages allegedly suffered by plaintiff because he did not have the delegated duties to carry out personnel actions.  (Id.)  This duties according to the defendants were only delegated to the Human Resources Office.  (Id. at 10-11.)  Moreover, the defendants argue that the alleged incident between Mr. Barbosa and plaintiff does not create a genuine issue of material fact as to whether their actions were motivated by political animus. (Id. at 12.)

        Plaintiffs counter that the evidence in this case shows that as a result of her demotion her salary was affected.  (Docket No. 69, at 15.)  She claims that as an Auditor VI she was entitled to a higher salary level and therefore a higher salary increase.  (Id.)  However, plaintiff claims that she only received the minimum increase assigned to lower positions.  (Id.)  Furthermore, plaintiff alleges that the demotion had an impact on her duties and responsibilities.  (Id.)  She claims that by being demoted to Auditor II she could not supervise other employees, attend personnel situations nor review audit reports of others.  (Id.)  According to plaintiff, she could only perform basic and general audits.  (Id.)  As to the alleged incident  with Mr. Barbosa, plaintiff contests that she was falsely accused.  (Id. at 17.)  Plaintiff claims that no action was taken by the defendants with respect to

CIVIL 08-1692 (JA)                           30

the alleged damages suffered by Mr. Barbosa's car.  (Docket No. 69, at 17.)

Thus, she claims that the incident was part of the pattern of discrimination against

her that began in 2001 because of her political affiliation and in retaliation for

opposing the defendants actions.  (Id.)  Plaintiff asserts that both her demotion

and the incident with Mr. Barbosa were not isolated events but related acts

predicated in political discrimination that can be linked to the defendants prior

discriminatory acts.  (Id.)

        The court finds that plaintiff has failed to establish a *prima facie* case for

political discrimination.  Although there seems to be no controversy that plaintiff

and the defendants are affiliated to different political parties, plaintiff does not

allege that the defendants knew of her political beliefs.  Plaintiff merely alleges

that she was a well known supporter of the NPP.  Even assuming that the

defendants had said knowledge, the evidence on the record would be insufficient

to support a finding that the challenged employment action, plaintiff's demotion,

was premised upon political affiliation.  Plaintiff did not come up with any

formidable argument nor did she provided the court with any evidence that could

put into question whether or not the New Classification plan, which was prepared

by an independent contractor, was put into effect for all employees of the DOH.

Furthermore, although plaintiff complains that as a result of the demotion her

salary was affected, the record shows that no such prejudice was caused.  The

CIVIL 08-1692 (JA)                    31

salary for a Auditor II ranges between $1,877 and $2,628.  On the other hand,

the salary for an Auditor VI ranges between $3,362 and $4,872.  Plaintiff, despite

being reclassified as an Auditor II, earned, including a salary increase of $150,

$4,949 a month.  There is nothing in the record that suggest that plaintiff's salary

was higher before she was reclassified to a Auditor II position.  The only way in

which plaintiff was affected by the demotion was with respect to her duties.

However,  this court has held that a plaintiff who has been deprived of its duties

does not have property interest.  <u>See</u> <u>Torres-Martínez v. P.R. Dep't of Corr.</u>, 485

F.3d 19, 24 -25 (1st Cir. 2007).   Furthermore, as stated before, there is no

evidence that shows that plaintiff's demotion was motivated by political animus

toward her.   Plaintiff believes that the DOH's decision to demote her was

predicated on illegal conduct because according to her Mr. Barbosa allegedly

impersonated her by drafting a report of what duties she was performing as an

Auditor VI.  Plaintiff's allegation can only be interpreted as  nothing "more than

posturing and conclusory rhetoric." <u>Acosta-Vega v. Brown</u>, 14 F. Supp. 2d 177,

183 (D.P.R. 1998) (quoting <u>McIntosh v. Antonino</u>, 71 F.3d 29, 33 (1st Cir. 1995)).

It is hard to believe that Mr. Barbosa's conduct was, as plaintiff suggests,  illegal

given the fact that he is the Director of Internal Audit of the DOH.  Assuming that

Mr. Barbosa's action were illegal, the fact remains that although plaintiff was

notified by the DOH of their intent to demote her, she did not take advantage of

CIVIL 08-1692 (JA)                    32

the procedural safeguards that were made available.  Thus, if anything, it appears

that by holding such a position Mr. Barbosa was the right person to say what were

plaintiff's duties as Auditor VI.  Moreover, the alleged incident with Mr. Barbosa,

even if true, is not indicative that it came about as a result of plaintiff's political

allegiance.  Simply put, this alleged discriminatory act by itself does not, as the

defendants state, create a genuine issue of material fact that precludes summary

judgment.   Finally, having found that all of the alleged prior acts of political

discrimination are time barred, neither plaintiff's demotion nor the alleged incident

with Mr. Barbosa can be linked to said acts.  Therefore, there being no such link

and because   the July 2, 2007 demotion and the February 2008 incidents are

merely isolated events, the court finds that plaintiff has no actionable claim under

the First Amendment

        B.  Supplemental Jurisdiction Claims

        Pursuant to 28 U.S.C. § 1367, a "district court[ ] may decline to exercise

supplemental jurisdiction" if it "has dismissed all claims over which it has original

jurisdiction. . . . "  28 U.S.C. § 1367(c)(3); see González-de-Blasini v. Family

Dep't, 377 F.3d at 89 (citing Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375

F.3d 99, 104 (1st Cir. 2004)).  Also, it is common for district courts not to

exercise supplemental jurisdiction over a plaintiff's state law claims when all of its

federal claims have been dismissed.  See Educadores Puertorriqueños v. Rey

CIVIL 08-1692 (JA)                    33


Hernández, 508 F. Supp. 2d 164, 186 (D.P.R. 2007) (citing McBee v. Delica Co.,

417 F.3d 107, 116 (1st Cir. 2005); González-de-Blasini v. Family Dep't, 377 F.3d

at 89)); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (quoting United

Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims

are dismissed before trial, . . . the state claims should be dismissed as well."));

Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a

general principle, the unfavorable disposition of a plaintiff's federal claims at the

early stages of a suit . . . will trigger the dismissal without prejudice of any

supplemental state-law claims.").

        Furthermore, "if the federal claims are properly dismissed, the District Court

does not abuse its discretion in declining to exercise supplemental jurisdiction over

the state-law claims asserted in the case." Rodríguez-Rivas v. Police Dep't of P.R.,

483 F. Supp. 2d 137, 140 (D.P.R. 2007) (citing Ramos-Piñero v. Puerto Rico, 453

F.3d 48, 55 (1st Cir. 2006)).  Accordingly, plaintiff will be at the "liberty to bring

her unadjudicated claims before the Commonwealth courts. . . . " González-de-

Blasini v. Family Dep't, 377 F.3d at 89.  Having dismissed all of plaintiff's federal

claims against the defendants, the court will not exercise supplemental

jurisdiction.  Therefore, the court dismisses without prejudice plaintiff's

supplemental claims.

CIVIL 08-1692 (JA)                    34

## V.  CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is hereby GRANTED.  Accordingly, all federal claims are DISMISSED WITH PREJUDICE.  Also, the state law claims are DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to enter judgment accordingly.

At San Juan, Puerto Rico, this 27th of day of September, 2010.

S/ JUSTO ARENAS
Chief United States Magistrate Judge